PHILLIP A. TALBERT
Acting United States Attorney
MICHAEL D. ANDERSON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GARY STEPHEN MAYNARD,<br><br>　　　　Defendant. | CASE NO. 3:21-MJ-0007 DMC<br><br>GOVT.'S DETENTION MEMORANDUM<br><br>DATE: August 10, 2021<br>TIME: 2:00 P.m.<br>COURT: Hon. Kendall J. Newman |

## I.　INTRODUCTION

Gary Stephen Maynard is charged by criminal complaint with setting an arson-fire in the Lassen National Forest in violation of Title 18, United States Code, Section 1855. As described in detail in the criminal complaint, he has set several other arson-fires within the last month. Maynard poses a significant danger to the public and, as explained below, no realistic conditions of release can effectively mitigate the risk of death and property destruction.

## II.　MAYNARD SHOULD BE DETAINED

### A.　Standard under the Bail Reform Act

Bail hearings generally proceed by proffer and the rules of evidence do not apply. 18 U.S.C. § 3142(f). The defendant has the right to call witnesses and to cross-examine government witnesses, if the government elects to call any. 18 U.S.C. § 3142(f).

The court must order a defendant detained if the court finds that conditions cannot be imposed

that will assure the defendant's appearance, or the safety of the community or another person. 18 U.S.C. § 3142(e). The burden with respect to the flight risk prong is preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990). With respect to danger, the government bears the burden by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1995).

The Bail Reform Act sets out several factors the Court should consider in reaching its decision regarding detention and release: (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or drug offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including ties to the community, past conduct, and employment history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

**B.     The facts of this case support detention**

1.     Nature and Circumstances of the Offense Charged

First, arson is a dangerous crime and it is a crime for which it is particularly difficult to fashion conditions of release. *See, e.g., United States v. Ferranti,* 66 F.3d 540, 544 (reversing district court release order in arson and witness tampering case, and citing cases where elaborate conditions of release were insufficient); *United States v. Arvanitis*, 667 F.Supp. 593 (N.D. Il. 1987) (detaining several defendants in an arson and extortion scheme based on the charged offenses). The penalties are serious and the incentive to flee is high.

Here, the nature and circumstances of Maynard's arson offense show that he is particularly dangerous, even among arsonists. Over the course of the last several weeks, Maynard has set a series of fires in the vicinity of the Lassen National Forest and Shasta Trinity National Forest. See Complaint Affidavit of USFS Special Agent Tyler Bolen ("Complaint Aff. of Bolen"). As the Court is likely aware, California is in the middle of a drought and a particularly early and difficult fire season consistent with the effects of climate change. *See Today's Challenges and Opportunities: Climate Change*, Briefing Paper, U.S. Dept of Agriculture, Forest Service, March 2008, available online at www.fs.fed.us (last viewed August 10, 2021); *Will Global Warming Produce More Frequent and More Intense Wildfires?, United States Geological Survey*, available at: https://www.usgs.gov/faqs/will-global-

warming-produce-more-frequent-and-more-intense-wildfires?qt-news_science_products=0#qt-news_science_products (describing scientific consensus and providing links to resources); *The Wildland Arsonist: One of the Most Dangerous Criminals*, WILDFIRE TODAY, Feb. 23, 2021, available online at https://wildfiretoday.com/2021/02/23/the-wildland-arsonist-one-of-the-most-dangerous-criminals (last viewed Aug. 10, 2021).  The area in which Maynard chose to set his fires is near the ongoing Dixie fire, a fire which is still not contained despite the deployment and efforts of over 5,000 personnel.  *Dixie Fire Now Second-Largest in California State History Here's What We Know*, Vincent Moleski and Amelia Davidson, SACRAMENTO BEE, Aug. 9, 2021, available online at https://www.sacbee.com/news/california/fires/article253350538.html (last viewed Aug. 10, 2021). Depending on wind direction, smoke from this fire has engulfed the federal courthouse here in Sacramento and has been experienced several states away.  See, *e.g.*, *The Ashes of the Dixie Fire Cast a Pall 1,000 Miles From Its Flames*, NEW YORK TIMES (Aug. 9, 2021, updated online Aug. 10, 2021). Maynard traveled long distances through California specifically to this area.  Complaint Aff. of Bolen. He entered the evacuation zone and began setting fires behind the first responders fighting the Dixie fire. In addition to the danger of enlarging the Dixie fire and threatening more lives and property, this increased the danger to the first responders.

      Words cannot describe this additional threat to firefighters and other emergency personnel as effectively as the map attached as Exhibit 1 to this memorandum.  The map shows the boundaries of the Dixie fire where firefighters are laboring to protect the public at significant personal risk.  The map also shows where Maynard set fires on August 5th and 7th behind those fire lines.  Maynard's fires were placed in the perfect position to increase the risk of firefighters being trapped between fires.  But for the dedication and efforts of U.S. Forest Service investigators working around the clock to track Maynard, those fires would not have been discovered in their infancy.  With Maynard's growing fires at their backs, firefighters would have been placed at much greater risk.

      2.      Weight of the Evidence

      The second detention factor also favors detention.  As described in the criminal complaint affidavit, Maynard was traveling alone through the forest in isolated areas.  Agents had installed a tracker on his vehicle.  Where Maynard went, fires started.  Not just once, but over and over again.  As a

result, the evidence is strong and Maynard will be convicted if he chooses to go to trial.

          3.      History and Characteristics of the Defendant/Ties to the Community

Maynard's ties to the community also appear weak.  He was living out of his car alone and traveling across large sections of Northern California.  Maynard appears to have had difficulty holding a teaching job at the various universities at which he has taught.  Therefore, this factor favors detention.

          4.      Nature and Seriousness of the Danger to the Community

Finally, Maynard poses a particular danger to the community.  He is a serial arsonist, during a dangerous time for state and the public from wildfires.  Wildfires can and do kill Californians and destroy their homes.  Virtually entire towns have been destroyed already this year as well as in prior fire seasons.  Moreover, the manner in which Maynard chooses to set his fires is particularly dangerous to first responders who are already stretched thin fighting large fires.

The nature of Maynard's arson-fires also make him a particularly poor candidate for pretrial release.  U.S. Forest Service Agents had a tracker on Maynard's vehicle and were waiting in shifts nearby to track Maynard's movements and discover any fires he set.  These were extraordinary and resource intensive precautions that were necessary because of the difficulty of finding someone in the forest without a tracker and the speed with which a fire can grow.  Exhibit 2, which is a photograph from Maynard's "Ranch Fire" shortly after it was discovered, demonstrates how quickly a fire can grow in the forest under current conditions even with these precautions in place.  Pretrial Services simply would not be able to provide the 24 hour in-person surveillance and monitoring that is required to ensure the safety of the community.  Maynard must be detained.

///

///

///

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the defendant be detained as a flight risk and as a danger to the community.

Dated: August 10, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/ MICHAEL D. ANDERSON
MICHAEL D. ANDERSON
Assistant United States Attorney